**FILED**
November 20, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: ____Yvette Lujan____
                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> v. <br><br> ERNESTO VILLARREAL, JR., <br><br> Defendant. | Case No. 4:24-CR-00165 |

## FACTUAL BASIS

If this case had gone to trial, the Government would have proven the following beyond a reasonable doubt, and the Defendant, ERNESTO VILLARREAL, JR., admits that the facts below are true and correct:

1. In or around August 2007, Ernesto VILLARREAL, Jr. ("VILLARREAL") became an employee of the Valentine Independent School District ("Valentine ISD" or the "ISD") in Valentine, TX, which is within the Western District of Texas.

2. Valentine ISD receives federal funds. During various one-year periods relevant to the indictment, Valentine ISD received benefits in excess of $10,000 from the federal government. For instance, in each of August 2022 and September 2023, Valentine ISD received in excess of $10,000 from the federal government. These benefits were received in the form of grants received from the U.S. Department of Education's Small, Rural School Achievement Program.

3. Additionally, in each of July 2020, July 2021, and July 2022, Valentine ISD received additional benefits in excess of $10,000 from the federal government. These benefits

Defendant's Initials ____EV____

were also received in the form of grants from the U.S. Department of Education, pursuant to one or more of the following U.S. Department of Education programs: the Supporting Effective Instruction Program, the Student Support and Academic Enrichment Program, and grants to local education agencies ("LEAs").

4. Additionally, in July 2021, Valentine ISD received additional benefits in excess of $100,000 from the federal government pursuant to the Coronavirus Response and Relief Supplemental Appropriations ("CRRSA") Elementary and Secondary School Emergency Relief Fund ("ESSER") and the American Rescue Plan ESSER.

5. During the time period covered by the indictment and the conduct described herein, VILLARREAL was employed as the Business Manager for Valentine ISD. As the Business Manager, Villarreal's responsibilities included all aspects of financial accounting and reporting for Valentine ISD. During the time period covered by the indictment and the conduct described herein, Villarreal was also the Valentine ISD Tax Assessor and Collector. As such, VILLARREAL was an agent of Valentine ISD during the time period covered by the indictment and the conduct described herein.

6. As part of VILLARREAL's employment by Valentine ISD, VILLARREAL was issued two ISD credit cards for official use – a Bank of America credit card, and a ComData credit card (collectively, the "ISD credit cards"). Villarreal was required to review and sign a cardholder agreement between himself and the ISD ("ISD cardholder agreement"). Villarreal signed the ISD cardholder agreement and dated it July 9, 2012. In signing the agreement, VILLARREAL agreed that, among other things, he would not under any circumstances use the ISD credit cards "to make personal purchases, either for others or myself," and that any willful intent to use the ISD credit cards "for

personal gain may result in disciplinary actions including termination of employment." VILLARREAL also agreed if he violated the terms of the ISD cardholder agreement and used the ISD credit cards for personal use or gain, that he would "reimburse the Valentine Independent School District for all incurred charges and any fees related to the collection of those charges." At least prior to the date of the indictment in this case, VILLARREAL did not reimburse Valentine ISD for any of the unauthorized charges discussed or otherwise referenced herein.

7. In signing the agreement, VILLARREAL also agreed that, among other things, he would "adhere to established procedures" for using the ISD credit cards, and acknowledged that "[f]ailure to do so will result in either revocation of my user's privileges and other disciplinary actions." VILLARREAL also agreed that he had been given a copy of the relevant credit card policy and understood the requirements for using the ISD credit cards. The aforementioned credit card policy stated, in part, that "any personal purchases" were prohibited transactions.

8. During the time period covered by the indictment and the conduct described herein, VILLARREAL used the ISD credit cards to steal and/or otherwise obtain without authority $5000 or more from Valentine ISD, including making personal purchases in violation of the ISD cardholder agreement that VILLARREAL signed. For instance, from August 22, 2020, to November 8, 2022, Villarreal made hundreds of purchases on the ISD Bank of America card issued to him (the "ISD Bank of America credit card") that were personal in nature, and which were not proper within the scope of VILLARREAL's duties with Valentine ISD or otherwise authorized by the ISD cardholder agreement or by Valentine ISD. Examples of such personal purchases

include $3,364 for a purchase made from Alexander Carpet One in Corpus Christi, Texas, where Villarreal had a home at the time; a payment of $2800 to Rosales plumbing, in Del Rio, Texas; numerous and regular personal purchases from Amazon and Amazon marketplace; personal purchases from Home Depot and McCoy's stores; numerous and regular personal purchases of gas and miscellaneous items at a Marfa, Texas convenience store and other gas stations, as well as charges for oil changes; personal payments to City of Del Rio utilities, which is a location where VILLARREAL owns property; and payments to Verizon Wireless and AT&T Mobility for personal services, among other such unauthorized personal purchases and unauthorized payments for personal services. Valentine ISD incurred and subsequently paid these charges.

9. Additionally, from August 4, 2020 to July 28, 2022, VILLARREAL made hundreds of purchases on the ISD ComData credit card issued to him (the "ISD ComData credit card") that were personal in nature, and which were not proper within the scope of VILLARREAL's duties with Valentine ISD or otherwise authorized by the ISD cardholder agreement or by Valentine ISD. Examples of such personal purchases include personal flights from Southwest, American Alaska, and United airlines; numerous charges for personal lodging including in Marfa, Texas; Corpus Christi, Texas; Grand Prairie, Texas; Chicago, Illinois; Sedona, Arizona; Atlanta, Georgia; Florida; Oklahoma; and Arkansas; personal purchases from a Home Depot in Del Rio, Texas, a McCoy's in Alpine, Texas, and a Target in El Paso, Texas; personal purchases from the Pinehurst Pro Shop in North Carolina; and numerous and regular personal purchases of gas, among other such unauthorized personal purchase and unauthorized

Defendant's Initials  *EV*

Factual Basis – ERNESTO VILLARREAL, JR.
Page 4 of 11

payments for personal services. Valentine ISD incurred and subsequently paid these charges.

10. From December 2021 through February 2022, VILLARREAL also hand wrote checks totaling $14,337.87 to himself from the Valentine ISD Tax Assessor / Collector account and the Valentine ISD Tax Assessor Collector Special account at Fort Davis State Bank without authorization, and subsequently cashed those checks, thereby embezzling and stealing funds that were the property of Valentine ISD. These checks were made out to VILLARREAL, signed by VILLARREAL, and cashed by VILLARREAL, as follows: Check no. 0193 for $1,500, dated December 2, 2021; check no. 2059 for $10,000, dated December 2, 2021; and check no. 2062 for $2,837.87, dated February 17, 2022. These payments were also not proper within the scope of VILLARREAL's duties with Valentine ISD, and were not otherwise authorized by Valentine ISD.

11. Between November 30, 2020, and July 11, 2022, VILLARREAL also used checks from a Valentine ISD account to make 10 payments totaling $22,659.00 to Discover to cover personal expenses owed to Discover, thereby embezzling and stealing funds that were the property of Valentine ISD. For six of those ten payments, VILLARREAL created fictitious documents pertaining to workshop programs that were not actually purchased by Valentine ISD, and attached that fictitious documentation to the check disbursement. These disbursements were also not proper within the scope of VILLARREAL's duties with Valentine ISD, and were not otherwise authorized by Valentine ISD.

12. Additionally, VILLARREAL knowingly devised another scheme to defraud to Valentine ISD with regard to payroll. VILLARREAL used his position as Business Manager to access payroll information for certain Valentine ISD employees.

VILLARREAL then created direct deposit payments in the employees' names that VILLARREAL then sent to VILLARREAL's own personal bank accounts at JP Morgan Chase and Capital One. VILLARREAL did this, at least in relevant part, by changing the routing number and account number associated with the employees' accounts to that of one of VILLARREAL's accounts at JP Morgan Chase or Capital One. VILLARREAL then generated payments that, on their face, appeared to have been sent to those employees for work that had been done for Valentine ISD (such as substitute teaching); but in fact were sent via a wire transaction to one of VILLARREAL's own accounts at JP Morgan Chase or Capital One, and were based on fictitious work that had not actually been done. In so doing, none of the employees were missing any expecting payments, and therefore no red flags were immediately raised. VILLARREAL did this without the knowledge or permission of Valentine ISD or the employees.

13. The payments were initiated by VILLARREAL in the Western District of Texas, and were sent from a Valentine ISD account at Fort Davis State Bank, in Fort Davis, Texas, which is also in the Western District of Texas. The payments were sent via the Federal Reserve's Automated Clearinghouse services ("ACH"). These ACH payment transactions were routed over the ACH network via a processing site located in New Jersey. As such, each of the payments traveled in interstate commerce.

14. Regarding the payment charged in Count Two of the indictment, on or about March 17, 2022, VILLARREAL generated a false payroll payment of $3,500 (gross) that VILLARREAL generated in Texas and sent to his own personal bank account at JP

Defendant's Initials  ɛV

Factual Basis – ERNESTO VILLARREAL, JR.
Page 6 of 11

Morgan Chase via ACH, resulting in a fraudulent net payment to VILLARREAL of $2,976.50.

15. Regarding the payment charged in Count Three of the indictment, on or about April 21, 2022, VILLARREAL generated a false payroll payment of $3,000 (gross) that VILLARREAL generated in Texas and sent to his own personal bank account at JP Morgan Chase via ACH, resulting in a fraudulent net payment to VILLARREAL of $2,574.75.

16. Regarding the payment charged in Count Four of the indictment, on or about May 19, 2022, VILLARREAL generated a false payroll payment of $2,400 (gross) that VILLARREAL generated in Texas and sent to his own personal bank account at JP Morgan Chase via ACH, resulting in a fraudulent net payment to VILLARREAL of $2,084.73.

17. Regarding the payment charged in Count Five of the indictment, on or about June 16, 2022, VILLARREAL generated a false payroll payment of $1,000 (gross) that VILLARREAL generated in Texas and sent to his own personal bank account at JP Morgan Chase via ACH, resulting in a fraudulent net payment to VILLARREAL of $923.50.

18. Regarding the payment charged in Count Six of the indictment, on or about September 15, 2022, VILLARREAL generated a false payroll payment of $4,961.66 (gross) that VILLARREAL generated in Texas and sent to his own personal bank account at JP Morgan Chase via ACH, resulting in a fraudulent net payment to VILLARREAL of $4,150.95.

19. Regarding the payment charged in Count Seven of the indictment, on or about September 15, 2022, VILLARREAL generated a false payroll payment of $4,760 (gross) that VILLARREAL generated in Texas and sent to his own personal bank account at JP Morgan Chase via ACH, resulting in a fraudulent net payment to VILLARREAL of $4,087.60.

20. Regarding the payment charged in Count Eight of the indictment, on or about September 15, 2022, VILLARREAL generated a false payroll payment of $1,200 (gross) that VILLARREAL generated in Texas and sent to his own personal bank account at JP Morgan Chase via ACH, resulting in a fraudulent net payment to VILLARREAL of $1,096.53.

21. Regarding the payment charged in Count Nine of the indictment, on or about April 21, 2022, VILLARREAL generated a false payroll payment of $180 (gross) that VILLARREAL generated in Texas and sent to his own personal bank account at JP Morgan Chase via ACH, resulting in a fraudulent net payment to VILLARREAL of $166.23.

22. Between August 3, 2020, and November 6, 2022, VILLARREAL used this scheme to defraud Valentine ISD by depriving Valentine ISD and stealing from Valentine ISD money in the amount of at least $77,519.66.[1] resulting in $72,922.93 that VILLARREAL obtained for his own personal benefit. Additional transactions that

---

1. The amount of "at least $77,519.66" is based on the net payments received by VILLARREAL in his accounts during this portion of the scheme. The actual loss to Valentine ISD during this portion of the scheme will be calculated based on (1) the gross amounts that were improperly withdrawn from a Valentine ISD account during this portion of the scheme, including money that would have been deducted from the gross payment amount before arriving at the net payment amounts that VILLARREAL actually received and obtained; and (2) the associated payroll tax incurred by Valentine ISD as a result of these payments.

Defendant's Initials  ꞓV

Factual Basis – ERNESTO VILLARREAL, JR.
Page 8 of 11

occurred pursuant to this scheme between April 21, 2016, and August 2, 2020, inclusive, resulted in VILLARREAL defrauding Valentine ISD by depriving Valentine ISD and stealing from Valentine ISD at least an additional $67,082.00.[2] resulting in $67,082.00 that VILLARREAL obtained for his own personal benefit. Combined, this scheme defrauded Valentine ISD by depriving Valentine ISD and stealing from Valentine ISD money in the amount of at least $144,601.66.[3] resulting in a total of $140,004.93 that VILLARREAL obtained for his own personal benefit. These transactions were also not proper within the scope of VILLARREAL's duties with Valentine ISD, and were not otherwise authorized by Valentine ISD.

23. By the virtue of this scheme, including at least by altering bank account information and routing information, and by disguising the transactions as purported payments to other employees for work that was purportedly done but not actually done, VILLARREAL demonstrated a conscious, knowing intent to deceive Valentine ISD through this scheme. Also by virtue of these scheme, including at least the facts that VILLARREAL disguised the transactions as payments for purported work as described above, and the fact that VILLARREAL transferred money belonging to Valentine ISD to VILLARREAL's own accounts at JP Morgan Chase and Capital One via ACH, VILLARREAL also demonstrated a conscious, knowing intent to cause harm to (that

---

2. The amount of "at least $67,082.00" is based on the net payments received by VILLARREAL in his accounts during this portion of the scheme. The actual loss to Valentine ISD during this portion of the scheme will be calculated based on the gross amounts that were improperly withdrawn from a Valentine ISD account during this portion of the scheme, including money that would have been deducted from the gross payment amount before arriving at the net payment amounts that VILLARREAL actually received and obtained: : and (2) the associated payroll tax incurred by Valentine ISD as a result of these payments.

3. Regarding the amount of "at least $144,601.66," see footnotes 1 and 2, above.

Defendant's Initials  _GV_  Factual Basis – ERNESTO VILLARREAL, JR.

is, to cheat) Valentine ISD by depriving Valentine ISD of money by means of deception.

24. In September 2022, Valentine ISD became aware of discrepancies in its annual financial budget. The discrepancies were determined to have been caused by activities of VILLARREAL, such as those described herein. VILLARREAL was placed on administrative leave on or about October 7, 2022. In November 2022, VILLARREAL emailed his written and signed letter of resignation to Valentine ISD.

25. VILLARREAL's activities described above resulted in the following losses to Valentine ISD: For his use of the ISD Bank of America credit card described above, an amount to be determined by the Court; for his use of the ISD ComData credit card described above, an amount to be determined by the Court; for the checks that VILLARREAL issued to himself as described above, $14,337.87; for the Discover payments described above, $22,659.00; and for the payroll fraud scheme described above, at least $144,601.66.[4]

26. Based on the activities and facts described above, VILLARREAL obtained in proceeds during the time period detailed in Counts One and Two of the indictment, specifically, on or about August 3, 2020, through on or about November 6, 2022, as follows: for his use of the ISD Bank of America credit card described above, an amount to be determined by the Court; for his use of the ISD ComData credit card described above, an amount to be determined by the Court; for the checks that VILLARREAL issued to

---

4. Regarding the amount of "at least $144,601.66," see footnotes 1, 2, and 3, above.

Defendant's Initials  ɛV

Factual Basis – ERNESTO VILLARREAL, JR.
Page 10 of 11

himself as described above, $14,337.87; for the Discover payments described above, $22,659.00; and for the payroll fraud scheme described above, $72,922.93.

DATE: 11/20, 2024

ERNESTO VILLARREAL, JR.
Defendant

DATE: November 20, 2024

SHANE O'NEAL
Attorney for Defendant

JAIME ESPARZA
UNITED STATES ATTORNEY

DATE: Nov. 20, 2024    By: JOHN A. FEDOCK
JOHN A. FEDOCK
Assistant United States Attorney